IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA )| |
| ) | Criminal Action No. 7:21-cr-00011 |
| v. ) | |
| ) | By:  Elizabeth K. Dillon |
| MELVIN MCKINLEY CHILDRESS ) | United States District Judge |

**MEMORANDUM OPINION AND ORDER**

This case is before the court on the government's motion for a Lafler/Frye hearing (Dkt.
No. 32), Childress's motion to preclude and suppress evidence from a cell phone search (Dkt.
No. 49), and the government's notices of intent to introduce 404(b) evidence (Dkt. Nos. 39, 48).
The matters have been briefed, and the court has heard argument from both parties.  At the
pretrial conference held on July 7, 2021, the court denied the motion to suppress with a written
opinion to follow.  In addition, the court denied the motion for the Lafler/Frye hearing and found
the government's notices of intent to introduce 404(b) evidence adequate.  This opinion will
provide the court's reasoning regarding these decisions.

I.  BACKGROUND

**A.  Factual Background**

On January 27, 2021, Special Agent ("SA") D.R. Lambert obtained a warrant to search a
residence in Roanoke, Virginia.  The warranted provided authority to search the "residence, all
adult persons, outbuildings, vehicles, and curtilage at [residential address redacted]" for
"heroin/fentanyl and . . . cellular phones . . . or other information that may be found relating to
[the] sale, distribution[,] or possession with intent to distribute controlled substances . . . ."  (Dkt.
No. 67-1 at 1.)  The warrant also listed the year, make, model, registration number, and vin
number for two vehicles expected to be at the residence: a Mercedes sedan and a Cadillac sedan.

1

(*Id.*)  The search warrant specified that "electronic items seized during the search may be analyzed at a future date and time at an off-site location designed for the analysis of electronic items."  (*Id.*)

SA Lambert submitted a two-page affidavit in support of his application for the search warrant.  (*Id.* at 4.)  The affidavit explained that "[d]uring the month of January 2021, [SA Lambert] and other members of law enforcement [were] conducting an investigation of Melvin McKinley Childress [] based on information that Childress [was] distributing suspected heroin and/or fentanyl."  (*Id.*)  "This investigation proceeded by means of controlled purchases using a confidential informant working at the direction of the V[irginia] State Police."  (*Id.*)  Most of the controlled purchases between the confidential informant and Childress occurred inside or near the residence to be searched.  (*Id.*)  "[O]fficers conducting surveillance during controlled purchases [] observed Childress through covert audio and video equipment conducting [drug] transactions inside the residence."  (*Id.* at 5.)  SA Lambert explained that "Childress is believed to be residing" at the residence to be searched.  (*Id.* at 4.)

The affidavit also provided information about the confidential informant, noting that "[t]he informant was searched prior to engaging in controlled activity, the informant was equipped with an audio/video recording and monitoring device, and surveillance officers were in place to observe where the informant went, and who the informant met with."  (*Id.* at 4.)  "After the controlled purchases, the informant turned over the substance purchased, and was searched again by the controlling officers, with nothing improper found."  (*Id.*)  SA Lambert noted that "[t]he confidential source used to conduct the controlled activities in this case is a self-admitted user of illegal narcotics, [] has pending charges for possession of illegal narcotics . . . [and] is

currently working as an informant in hopes of mitigating certain state narcotics charges against [him]." (*Id.* at 6.)

On January 28, 2021, officers executed the search warrant on the residence which did not produce any significant evidence. (Dkt. No. 67 at 2.) Childress does not challenge this search warrant. Childress was not present at the residence during the search, but he was stopped by officers nearby while driving the Cadillac automobile that was listed on the search warrant for the residence. (*Id.*) During the traffic stop, officers seized Childress's cell phone. Childress does not challenge the seizure of the cell phone. SA Lambert then swore out an additional search warrant for the cell phone. The affidavit in support of the application for the cell phone search warrant stated:

> On January [2]7, 2021 Special Agent Lambert conducted a search warrant operation of [residential address redacted]. During the investigation your affiant identified Melvin CHILDRESS as a source of supply of Heroin/Fentanyl. A traffic stop was conducted on CHILDRESS and subsequent [to] arrest a cell phone was located on his persons. The Affiant knows, due to his training and experience, that those involved in the illegal use/distribution of controlled substances often keep lists of customers/suppliers on their cellular devices, arrange for the illegal purchase/sale of controlled substances utilizing voice and text messaging, and often store digital photo/video files depicting themselves with controlled substances and/or the proceeds from their sale, this is often done on one or more cellular devices. The Affiant seeks the issuance of this in order to identify any sources for the illegal distribution of controlled substances. (Dkt. No. 67-2 at 3.)

On January 29, 2021, a magistrate[1] issued the search warrant providing authorization to search the cell phone. (Dkt. No. 67-2 at 1.) This search warrant is the subject of the motion to suppress. "The search of the cell phone was fruitful, uncovering records of a number of text messages and phone calls that [the government believes] corroborate[s] [Childress's involvement in] the various controlled buys." (Dkt. No. 67 at 2.)

---

[1] The search warrant for the residence was issued by Magistrate Kleene-Young, while the search warrant for the cell phone was issued by Magistrate King. (Dkt. Nos. 67-1, 67-2.)

## B. Procedural Background

On March 15, 2021, a grand jury returned a four-count indictment against Childress for distributing a measurable quantity of fentanyl on January 20, 2021 (Count 1), January 21, 2021 (Count 2), January 22, 2021 (Count 3), and January 26, 2021 (Count 4) in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

Recently, at a pretrial conference, the court heard argument on several pending motions. The government filed a motion for a Lafler/Frye hearing (Dkt. No. 32), which Childress opposed (Dkt. No. 38). Childress filed a motion for release of Brady and Giglio materials. (Dkt. No. 36.) Later, the government filed two notices of intent to introduce 404(b) evidence (Dkt. Nos. 39, 48), to which Childress objected during oral argument. In addition, Childress filed a motion to suppress the evidence obtained from the search of his cell phone (Dkt. No. 49), which was opposed by the government and briefed extensively. (Dkt. Nos. 50, 53, 67, 73.) Childress has also filed a motion to exclude testimony of the government informant (Dkt. No. 57), to which the government objected at oral argument. Finally, at the pretrial conference held on July 7, 2021, Childress made an oral motion to compel discovery of police policies and procedures regarding confidential informants, to which the government objected. (Dkt. No. 75.) The court resolved most of these motions at the pretrial conference, but the court took the motion for *Brady* and *Giglio* materials under advisement.

On July 12, 2021, the court granted Childress's motion for *Brady* and *Giglio* material as it relates to a confidential informant agreement and denied Childress's motion to compel discovery of police policies and procedures related to confidential informants. (Dkt. No. 77.) Childress has since moved for reconsideration of the denial of the motion to compel. (Dkt. No. 79.) This opinion does not address the motion to reconsider.

## II. DISCUSSION

### A. Government's Motion for a *Lafler*/*Frye* Inquiry

The government "moves that the Court make formal inquiry on the record, prior to trial, into whether the Defendant has received, and had the opportunity to consider, the various plea agreements that were offered by the government in this case, and whether the defendant knowingly and willfully chose not to accept any of these plea agreements." (Dkt. No. 32 (citing *Lafler v. Cooper*, 132 U.S. 1378 (2012); *Missouri v. Frye*, 132 U.S. 1399 (2012)).) Childress opposes this motion because he claims, "the government has not made any plea offers . . . ." (Dkt. No. 38.) Childress further argues that "[i]t appears to be a new trend for the government to request pre-trial hearings on this issue" and but such hearings should only be conducted when they are "necessary and useful." (*Id.* at 2.)[2]

Generally, a *Lafler*/*Frye* hearing works to the benefit of defense counsel because it demonstrates on the record that they have fulfilled their responsibilities in the plea bargain process. *See generally United States v. Bryant-Royal*, No. CR ELH-12-0040, 2019 WL 1936734, at *7 (D. Md. Apr. 30, 2019), *aff'd*, 794 F. App'x 300 (4th Cir. 2020). Here, a *Lafler*/*Frye* hearing is not necessary as the government has not made any plea offers at this time. Even if an offer had been made, the court would forego the inquiry given Childress's objection and in reliance on defense counsel's assurances that he has fulfilled his duty to inform his client of any plea offers. Therefore, the court denied the government's motion for a *Lafler*/*Frye* hearing.

---

[2] The court is unaware of any trend but notes that it typically conducts such an inquiry of its own accord.

**B. Childress's Motion to Preclude and Suppress Evidence from the Cell Phone Search**

Childress argues that the court should suppress the information obtained from the cell phone search because: (1) the government delayed in producing the evidence to the defense; (2) the affidavit in support of the warrant for the search lacked probable cause; and (3) the police misrepresented information in the warrant application. (Dkt. No. 49.) For the reasons stated below, the court will deny the motion to suppress.

*1. Delay in Producing Evidence from Cell Phone Search*

"Pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, 'the government is required to disclose evidence that is both favorable to an accused and material to either guilt or punishment.'" *United States v. Contech Engineered Sols. LLC*, No. 5:20-CR-481-FL-2, 2021 WL 714991, at *1 (E.D.N.C. Feb. 18, 2021) (quoting *United States v. Newby*, 251 F.R.D. 188, 190 (E.D.N.C. 2008)). "This requirement includes the disclosure of evidence that could potentially be used to impeach or discredit a government witness, *Giglio v. United States*, 405 U.S. 150, 154 (1972), encompassing all plea agreements and promises of leniency, immunity, or other similar inducements to testify that have been given to witnesses, and the criminal records of witnesses, *United States v. Stroop*, 121 F.R.D. 269, 274 (E.D.N.C. 1988)." *Id.* "Although a specific mandate on the timing of these disclosures has not been established, the Fourth Circuit has held that there is no violation of a defendant's right to due process so long as the government discloses exculpatory and impeachment evidence to a defendant 'in time for its effective use at trial.'" *Id.* (quoting *United States v. Smith Grading & Paving, Inc.*, 760 F.2d 527, 532 (4th Cir. 1985)).

"In addition to the Government's obligations under *Brady*, Fed. R. Crim. P. 16 requires the Government to disclose a defendant's statements, a defendant's prior record, certain

documents and objects, reports of examinations and tests, and written summaries of expert

witness testimony." *Id.* (citing Fed. R. Crim. P. 16(a)(1)). "Specifically, the Government must

disclose a document or object 'if the item is within the government's possession, custody, or

control and: (i) the item is material to preparing the defense; (ii) the government intends to use

the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the

defendant.'" *Id.* (quoting Fed. R. Crim. P. 16(a)(1)(E)). "The Advisory Committee Notes to

Rule 16.1 explain that '[b]ecause technology changes rapidly, the rule does not attempt to state

specific requirements for the manner or timing of disclosure in cases involving ESI.'" *Id.* Rule

16.1(b) provides that "one or both parties may ask the court to determine or modify the time,

place, manner, or other aspects of disclosure to facilitate preparation for trial."

While "there are no clear measures of when a large document production fails to fulfill

the Government's *Brady* obligations to disclose exculpatory material in time for its effective use

at trial . . . [d]ecisions appear to be fact-bound and turn on the actions taken by the Government

to facilitate the defendant's review of the production." *Id.* Courts consider factors "such as

whether the production is searchable and whether the Government has provided detailed indices,

lists of key documents, a list of the evidence the Government expects to present at trial, and any

other assistance to the defendant in navigating the production." *Id.* (citing *United States v.*

*Gross*, 424 F. Supp. 3d 800, 804 (C.D. Cal. 2019); *United States v. Satary*, No. CR 19-197, 2020

WL 5850163, at *11 (E.D. La. Oct. 1, 2020); *United States v. Meredith*, No. 3:12-CR-143-CRS,

2015 WL 5570033, at *2 (W.D. Ky. Sept. 22, 2015)).

Here, Childress argues that the government's delay in producing evidence from the cell phone search combined with alleged problems with Cellebrite,[3] the technology used to conduct the search of the phone, requires suppression of the evidence.  (Dkt. No. 49 at 2–3.)  The government disagrees, explaining that it "received the [cell phone] information for the first time on the morning of May 21, 2021, and turned it over to counsel three hours later, without so much as a slight delay to review it."  (Dkt. No. 50 at 2.)

In Childress's briefing, he claims that "given the lateness of the disclosure, [defense] counsel simply cannot make time to go through every conversation with Mr. Childress and ensure that the Cellebrite report accurately conveys the contents of the communication."  (*Id.* at 3.)  Contrary to this argument, however, Childress argued that he was prepared for trial and did not need additional time for review of these records.  Moreover, since the filing of the motion to suppress, the trial has been continued from the original trial date of June 7, 2021, to a new trial date of July 20, 2021.  Childress now has had approximately two months to review the cell phone evidence before trial which should be adequate time for him to make effective use of the evidence.  Therefore, any delay by the government in providing Childress with the cell phone evidence does not require suppression of the evidence.

*2. Authority Pursuant to Warrant*

Two warrants are at issue in this case.  The first search warrant was issued on January 27, 2021, and executed on January 28, 2021 ("First Warrant").  The second warrant, which Childress asserts was based on a barebones affidavit, was issued on January 29, 2021 ("Second Warrant").

---

[3] Childress cites only to a blog post in support of his position that Cellebrite may not provide accurate information of a cellphone's contents.  (Dkt. No. 49 at 3 (citing Riana Pfefferkorn, *I have a lot to say about Signal's Cellebrite Hack*, May 12, 2021 available at https://cyberlaw.stanford.edu/blog/2021/05/i-have-lot-sayabout-signal%E2%80%99s-cellebrite-hack).)  The government argues that "Childress provides no facts from this case, or any support at all for the proposition he advances [regarding Cellebrite] being relevant here."  (Dkt. No. 50 at 3.)  The court is persuaded that Childress's general allegations regarding Cellebrite are lacking adequate support.

The First Warrant permitted the search of the residence and two vehicles for many specified items, including drugs, firearms, cellular phones, and phone records.  (Dkt. No. 67-1 at 1.) Childress admits that this warrant permitted the search of the residence and two vehicles and that it allowed police to seize and look for cell phones.  (Dkt. No. 72 at 2.)  When the search warrant was executed, Childress was not at the residence, but he was stopped while driving one of the identified vehicles, and his cell phone was seized.  Childress does not challenge these actions. He contends, however, that the warrant did not authorize the police to search cell phones.  In making this argument, he ignores the language of the warrant.  The warrant states that "electronic items seized may be analyzed at a future date and time at an off-site location designed for the analysis of electronic items."  (Dkt. No. 67-1 at 1.)  Furthermore, Virginia Code § 19.2-52 provides, "Any search warrant issued for the search and seizure of a computer, computer network, or other device containing electronic or digital information shall be deemed to include the search and seizure of the physical components and the electronic or digital information contained in any such computer, computer network, or other device."

Childress further admits that "had the police requested and obtained a previous warrant to search the cellphone found during the traffic stop, then the barebones application on January 29 would be irrelevant."  (Dkt. No. 72 at 3.)  The police did request and obtain a warrant to search the cellphone prior to the January 29 application.  The First Warrant specifically mentions cell phones and specifically provides for the analysis of the same.  There is no ambiguity here, and the statute provides additional authority for the search and seizure of the electronic or digital information contained in the cell phone.

While a belt and suspenders approach to the warrants in this case may not have been necessary, application for and receipt of the Second Warrant does not invalidate the authority of

the First Warrant.  Because the First Warrant authorizes the search of the cell phone, the Second Warrant is irrelevant.  Thus, the motion to suppress and request for a *Franks* hearing will be denied.

## C.  Government's Notice of Intent to Introduce 404(b) Evidence

The government has filed two notices of intent to introduce 404(b) evidence.  First, the government intends to introduce evidence that "on December 28, 2020, officers observed a suspected drug deal," followed one of the vehicles involved, and found two people injecting narcotics, one of whom is now the confidential informant in this case.  (Dkt. No. 39 at 1.)  During a mirandized interview, the confidential informant stated that he had purchased the drugs from "Cee," who officers would later identify as Childress.  (*Id.* at 2.)  Officers later observed another drug deal involving Childress.  (*Id.*)  The government argues that "[t]his evidence is admissible under Rule 404(b) and the United States intends to introduce it into evidence at the trial of this matter to show motive, intent, preparation, common scheme or plan, identity, and absence of mistake as regards the Defendant."  (*Id.*)

In its second notice, the government states that it plans to introduce evidence from the search of Childress's cell phone.  (Dkt. No. 48.)  Specifically, "[t]he phone [] contains text messages and phone calls between Mr. Childress and the confidential informant that directly relate to the various controlled transactions charged in the indictment . . . [which] the government regards [] as direct evidence establishing Mr. Childress'[s] guilt."  (*Id.* at 2.)  In addition, "there are [] text message and telephone calls between the informant and Mr. Childress that do not directly relate to any controlled purchase, but show an ongoing pattern of dealing between the two individuals that predates the controlled purchases, and is suggestive of further drug dealing."  (*Id.*)  The government argues that "[t]hese records would be admissible under

Rule 404(b) to show identity, knowledge, intent, common scheme or plan, and absence of mistake." (*Id.*)

Childress objects to the admission of this evidence because the government has not adequately shown the theory on which they intend to introduce this alleged 404(b) evidence, but, rather, have listed all the bases on which 404(b) evidence is admissible.

Federal Rule of Evidence 404(b) permits evidence of a defendant's prior crimes, wrongs, or other "bad act" to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." In *United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997), the Fourth Circuit held that evidence of prior acts becomes admissible under Rules 404(b) and 403 if it meets the following criteria:

> (1) The evidence must be relevant to an issue, such as an element of an offense, and must not be offered to establish the general character of the defendant. In this regard, the more similar the prior act is (in terms of physical similarity or mental state) to the act being proved, the more relevant it becomes. (2) The act must be necessary in the sense that it is probative of an essential claim or an element of the offense. (3) The evidence must be reliable. And (4) the evidence's probative value must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the factfinding process.

The trial court has broad discretion in determining whether to admit 404(b) evidence. *See e.g. United States v. Haney*, 914 F.2d 602, 607 (4th Cir. 1990); *United States v. Weaver*, 282 F.3d 302, 313–14 (4th Cir.), *cert. denied*, 537 U.S. 847 (2002); *United States v. Fells*, 920 F2d 1179, 1181 (4th Cir. 1990). In fact, the Fourth Circuit has noted that the reasons which justify 404(b) evidence are not limited to those explicitly stated in the rule but are almost "infinite" in number. *United States v. Watford*, 894 F.2d 665, 671 (4th Cir. 1990); *United States v. Masters*, 622 F.2d 83, 86 (4th Cir. 1980). Rule 404(b), however, does not permit evidence of other bad acts simply to demonstrate a defendant's criminal propensities or bad character—unless the defendant had put his character at issue. *United States v. Davis*, 657 F.2d 637, 639 (4th Cir.

1981); *United States v. Johnson*, 634 F.2d 735, 737–38 (4th Cir. 2013). Even where 404(b) evidence is potentially prejudicial, the Fourth Circuit has allowed jury instructions to serve as a sufficient remedy. *See e.g. United States v. Lespier*, 725 F.3d 437, 448 (4th Cir. 2013); *cert. denied*, 571 U.S. 1154 (2014); *United States v. Branch*, 537 F.3d 328, 342 (4th Cir. 2008*), cert. denied*, 555 U.S. 1118 (2009).

Here, the government has articulated non-character-based reasons for using the evidence it seeks to admit. Evidence that officers observed a man identified as Childress and observed Childress engaging in prior drug transactions is admissible 404(b) evidence because it demonstrates intent to engage in drug trade, preparation through prior drug deals, common scheme or plan by continuing to sell drugs to the same individual, the identity of Childress, and absence of mistake because Childress has engaged in drug dealing before. Similarly, any non-intrinsic text messages between Childress and the confidential informant may show intent to sell drugs, preparation and plan by communicating over text to arrange a drug deal, knowledge of drug dealing, the identity of Childress, and absence of mistake or accident as to the sale of drugs. Because the government is not yet aware what defenses Childress will present, there is no need for the government, at this stage of the litigation, to limit the purposes for which they intend to introduce the 404(b) evidence, so long as they have a clearly articulated, non-character reason for introducing this evidence. Further, the court is not aware of any case law that suggests that 404(b) evidence may only be presented for one purpose enumerated in the rule.

Furthermore, the evidence the government seeks to introduce satisfies the *Queen* test. The evidence is relevant to whether Childress was knowingly engaged in drug distribution and therefore, probative of essential an element of the offense. The government has represented that the evidence is reliable and there is no indication that its probative value is outweighed by

confusion or unfair prejudice. Therefore, the evidence the government seeks to admit at trial is admissible 404(b) evidence to the extent it is offered for non-character-based reasons, and the jury will be instructed appropriately.

### III. CONCLUSION

As ordered at the hearing and for the reasons stated above, the court DENIES the government's motion for a *Lafler*/*Frye* hearing (Dkt. No. 32), DENIES Childress's motion to preclude and suppress evidence from the cell phone search (Dkt. No. 49), and FINDS the government's notices of intent to introduce 404(b) evidence sufficient (Dkt. Nos. 39, 48).

Entered: July 14, 2021.


*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge